UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                    )
EMC CORPORATION,                    )
                                    )   Civil Action No.
    Plaintiff,              )   10-40053-FDS
                                    )
v.                                  )
                                    )
EMANUEL ARTURI,                     )
FRANCIS CASAGRANDE,                 )
CHRISTOPHER J. BLOTTO and           )
KNOWLEDGENT GROUP, INC.,            )
                                    )
    Defendants.             )
                                    )

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S SECOND MOTION FOR PRELIMINARY INJUNCTION

**SAYLOR, J.**

This is a dispute between a corporation and several of its former employees arising out of their departure to a competitor. Defendants Emanuel Arturi, Francis Casagrande, and Christopher Blotto are former employees of plaintiff EMC Corporation who are now employed by defendant Knowledgent Group, Inc. While employed at EMC, Blotto signed a Key Employee Agreement ("KEA") with three relevant provisions: a non-competition clause, a non-solicitation clause, and a confidentiality clause. EMC now seeks preliminary injunctive relief for alleged breaches of all three contractual provisions.

EMC previously obtained a preliminary injunction against Blotto restraining him from soliciting business on behalf of Knowledgent from Daiichi Sankyo, Co., an EMC customer. The Court found that EMC had shown a substantial likelihood of success on the merits of its claim that Blotto had violated the non-solicitation provision in the KEA in his contacts with Daiichi

Sankyo.

All three provisions of the KEA are at issue in this motion. EMC contends that newly-discovered evidence reveals that Blotto repeatedly violated the KEA by working for a competitor of EMC, soliciting EMC's employees to join Knowledgent, soliciting EMC's customers, and downloading to a thumb-drive thousands of EMC's confidential electronic files. It seeks a broad preliminary injunction that would bar Blotto from continuing to work at Knowledgent, from soliciting EMC employees or customers, and from misappropriating or misusing EMC's confidential information. For the reasons that follow, the motion will be granted in part and denied in part.

## I. Factual Background

Christopher J. Blotto was employed by EMC Corporation from September 2007 until his resignation on December 4, 2009. (Blotto Decl. ¶ 2). On September 21, 2007, Blotto signed the KEA. Shortly after resigning from EMC, Blotto was hired by Knowledgent as their Chief Technology Officer. (*Id.* ¶ 1).

As noted, the KEA contains three relevant provisions: a non-competitive provision, a non-solicitation provision, and a confidentiality provision.

### A. Non-Competition Provision

Section (b) of the non-competition provision of the KEA provides in relevant part:

This section shall apply to you only if, as of the effective date of your termination, you are in a position at the Company that is at the director level or higher. For purposes of this Agreement, "director level" includes all individuals at the Company that report directly to a vice president and/or that are identified on the Company's systems as director level. For the twelve month period following the effective date of your termination . . . from the Company . . . you agree that you will not, directly or indirectly, provide any services . . . to any entity . . . selling

products or services competitive with products or services . . . sold by the Company . . ."

(KEA ¶ 1(b)). The parties do not dispute that in his capacity as Chief Technology Officer at Knowledgent, Blotto is directly providing services to another company in competition with EMC, and has done so within one year of the date of his termination at EMC. Rather, the dispute centers on whether, at the date of his termination, Blotto was in a position at EMC that was at a "director level," subjecting him to the non-competition provision.

When he was hired by EMC, Blotto was a "practice manager." At the time of his hiring, he sought and received confirmation from the company that he was not a director, and was thus not bound by the covenant not to compete. (Blotto Decl. ¶¶ 5, 6). At least as early as September 2009, however, Blotto was classified as a "director" on EMC's electronic systems. (*See* Blotto Dep. at 52, 53). His responsibilities and compensation increased significantly during his tenure at EMC. (*See* Blotto Dep. at 47; Blotto Decl. ¶¶ 11, 12). EMC, however, never informed Blotto in writing that he had been promoted from a practice manager to a director-level position, or that the non-competition provision in the KEA would apply to him. (*See* Blotto Decl. ¶¶ 15, 16, 17).

### B. Non-Solicitation Provision

The non-competition provision of the KEA provides in relevant part:

> During your employment and for the twelve month period following the effective date of your termination, . . . you agree that you will not . . . directly or indirectly: (a) solicit, or attempt to solicit, any person who is an employee . . . of the Company . . . or (b) solicit, or attempt to solicit, the business of any person or entity that is either a customer or potential customer of the Company, to which you, directly or indirectly, attempted to or did, sell or provide any product or service on behalf of EMC . . . during the one year period prior to the effective date of your termination.

(KEA ¶ 5).

In April 2010, EMC filed an amended complaint alleging that Blotto had been both directly and indirectly involved in soliciting one of EMC's employees, Mark Fox, to leave EMC and join Knowledgent. (Pl's Am. Compl. ¶¶ 71-76). The complaint cited an e-mail that Fox had sent to a third party describing Blotto's role in facilitating Knowledgent's hiring of Fox. (*Id.* ¶ 73). EMC has also submitted evidence that Blotto had contacts with other EMC employees. Blotto insists that while he spoke to certain EMC employees, and to Knowledgent about "pros and cons" of EMC employees seeking positions at Knowledgent, he did not solicit any of these applicants. (*See* Blotto Decl. ¶¶ 20-22). Rather, he asserts that he merely responded to these applicants' efforts to contact him, and informed them all that he could not solicit them for positions at Knowledgent. (*Id.* ¶¶ 20, 21).

In his deposition, Blotto also testified about several meetings he held with potential customers on behalf of Knowledgent over the course of the past year. (*See* Blotto Dep. at 113, 114, 119, 123, 125, 140). Each of these meetings was with customers or potential customers of EMC that Blotto had solicited on behalf of EMC in the year preceding his departure. In EMC's view, Blotto's meetings were intended to solicit these potential customers for Knowledgent, in violation of the KEA. Blotto contends that the contacts and communication in these meetings did not amount to solicitation.

### C. **Confidentiality Provision**

The confidentiality provision of the KEA obligates Blotto not to "use for [his] own benefit, divulge or disclose to anyone except to persons of the Company whose positions require them to know it, any information not already lawfully available to the public concerning the Company ('Confidential Information')." (KEA ¶ 3).

4

In the course of discovery conducted in September and October 2010, Blotto revealed that while he was still at EMC, he had downloaded numerous files containing EMC confidential information to a thumb drive, which he brought with him to Knowledgent. (*See* Blotto Dep. at 18, 19, 23; Blotto Decl. ¶ 60). Although he resigned from EMC in December 2009, he accessed the files while at Knowledgent through March 2010, when the thumb drive stopped functioning. (*See* Blotto Decl. ¶ 60). He also took with him to Knowledgent three diaries containing confidential information about EMC's customers. (*See* Blotto Decl. ¶ 61). There is some evidence that Blotto used this confidential information to help Knowledgent obtain business. (*See* Blotto Dep. at 133, 136). He has since turned over the thumbnail and the diaries to EMC.

## II.     Procedural Background

In March 2010, EMC filed suit against Arturi, Casagrande, and Knowledgent for breach of contract, tortious interference with business relationships, unjust enrichment, and civil conspiracy. It also brought a claim under Mass. Gen. Laws ch. 93A. EMC filed an amended complaint in April 2010 that added Blotto as a defendant.

In late August 2010, EMC brought its first motion for a preliminary injunction against Blotto. It sought an order to enjoin Blotto from soliciting any customer of EMC in violation of the non-solicitation provision of his KEA. After a hearing, this Court issued a preliminary injunction that prohibited Blotto from soliciting Daiichi Sankyo.

EMC's second motion for a preliminary injunction was filed on November 8, 2010, and a hearing on the motion was held on December 1, 2010. EMC has requested that the Court expand its first preliminary injunction to prohibit Blotto from (1) working at Knowledgent for one year from the date of the order; (2) soliciting any current or potential EMC customers that Blotto

5

solicited on behalf of EMC in the year preceding his resignation; (3) soliciting EMC employees; and (4) possessing or disclosing EMC confidential information.

## III. Analysis

### A. Whether Equitable Relief is Available Beyond the One-Year Term of the Non-Competition and Non-Solicitation Agreements

The non-competition and non-solicitation provisions of the KEA impose restrictions on Blotto for one year following the effective date of his termination. The date of termination was December 4, 2009. EMC filed its second motion for a preliminary injunction on November 8, 2010, less than one month before the expiration of the restrictions. After briefing by the parties, the Court held a hearing on the motion on December 1, 2010. Recognizing that the non-competition and non-solicitation covenants would expire three days after the hearing, EMC contends that this Court should act in equity to enter a preliminary injunction beyond the one-year term of restraint. Blotto opposes an extension of the injunction on the ground that an injured party may not seek such equitable relief beyond the terms provided in the contract. *See A-Copy, Inc. v. Michaelson*, 599 F.2d 450, 452 (1978).

The threshold question for the Court, then, is whether it may restrict Blotto's actions beyond the terms of the KEA. The First Circuit addressed precisely this question in *A-Copy, Inc. v. Michaelson*. *See* 599 F.2d at 452. In *A-Copy*, the former employee, Michaelson, openly violated a covenant not to compete that bound him for one year following his termination from A-Copy. *See* 599 F.2d at 451. A-Copy sought a preliminary injunction one week after Michaelson was terminated, as soon as the company became aware of his competitive activities. *Id.* The district court held a hearing on the motion two months later, but did not grant relief until after the

6

covenant's one-year period of restraint had expired. *Id.* The preliminary injunction barred Michaelson from working in the same industry for one year from issuance of the order or determination on the merits. *Id.*

On appeal, the First Circuit vacated the portion of the preliminary injunction that restricted Michaelson from competing with A-Copy. *Id.* at 453. Relying on Massachusetts law, the court held that because the contractual period of restraint had expired, specific injunctive relief was no longer an appropriate remedy. *A-Copy*, 599 F.2d at 452 (citing *All Stainless, Inc. v. Colby*, 364 Mass. 773, 777 (1974)). The Court noted that A-Copy could seek damages for harms flowing from Michaelson's violation of the restrictive covenant. *Id.* It found no Massachusetts authority that would permit equitable relief beyond the bargained-for period of time, notwithstanding the fact that the delay was caused by the tardiness of the court, not the plaintiff. *Id.* Furthermore, it did not find merit in A-Copy's argument that the one-year non-competition period should be tolled while Michaelson violated the restriction and the court delayed. *Id.* at 452 n.1.

EMC contends that *A-Copy* is not controlling here. In EMC's view, Blotto's deception and misconduct, rather than a delay in judicial proceedings, prevented it from seeking injunctive relief earlier. It contends that it did not know about Blotto's alleged violations of the non-solicitation provision until April 2010, and that Blotto did not reveal his misappropriation of the thumb drive until late September 2010. Because it did not have the benefit of the non-competition agreement or the protection of the non-solicitation agreement prior to these dates, it contends that equity demands enforcement of these provisions beyond their expiration. In support of its argument, EMC cites dicta from an unpublished state court decision suggesting that *A-Copy* and related state law precedent control only when "the period of restraint expired due to no fault

7

of the defendant." *Exeter Group, Inc. v. Sivan*, 2005 WL 1477735, at *6 (Mass. Super. Ct. Mar. 24, 2005).[1]

At the outset, it is clear that the delay in seeking to enforce the non-competition provision—as opposed to the non-solicitation provision—was caused by EMC. EMC knew on the day that Blotto left the company that he was going to work for a competitor, in violation of the covenant not to compete (assuming it applied to him as a "director-level" employee). It therefore could have sought immediate relief. EMC concedes the point, but argues that it would be bad public policy to force the company to sue preemptively every former employee it knows is in violation of a non-competition provision without evidence of further wrongdoing. Because it did not discover Blotto's misconduct until later, and in particular did not discover his misappropriation of confidential company information until September 2010, EMC urges the Court to enforce the non-competition provision prospectively beyond its terms as the appropriate remedy.

The Court is not persuaded that *A-Copy* can be so readily distinguished, or that equitable considerations warrant enforcement of the non-competition and non-solicitation provisions beyond their terms. Interpreting Massachusetts law, *A-Copy* spoke in absolute terms, explaining that a joint stipulation by the parties was the "only" exception to the principle that injunctive relief is no longer available to an injured party after expiration of the period of restraint. *See* 599 F.2d at 452. It treated the inquiry into the terms of the contract as a threshold question to be resolved

---

[1] For the proposition that courts can extend injunctions beyond the contracted-for period of restraint, EMC also cites one case from Iowa and another from Virginia. *See Presto-X-Company v. Ewing*, 442 N.W.2d 85, 90 (Iowa 1989); *Roanoke Eng'g Sales Co. v. Rosenbaum*, 290 S.E.2d 882, 886-87 (Va. 1982). Principles of contract interpretation from other jurisdictions, however, shed little light on how a contract governed by Massachusetts law should be interpreted. *See* KEA ¶ 7(j) ("This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without regard to the doctrine of conflicts of law.").

before a court should even consider availability of equitable relief. *See id.* By contrast, *Exeter Group* weighed the impending expiration of the non-competition agreement as one factor in the balance of harms analysis when considering whether to issue a preliminary injunction. *See* 2005 WL 1477735, at *6.[2] This alone does not offer sufficient justification for departing from *A-Copy*'s directive.

Moreover, there was no dispute in *A-Copy* that the former employee was bound by the covenant not to compete and that he knowingly acted in violation of it. *See* 599 F.2d at 450, 451. Here, whether Blotto was bound by the non-competition provision is sharply contested; he insists that he acted in reliance on representations by EMC that the provision was not applicable to him. (Blotto Decl. ¶ 7). If the court in *A-Copy* would not enforce a non-competition agreement beyond its terms against an employee clearly bound by the agreement, this Court is particularly reluctant to prospectively enforce the non-competition provision in the KEA against an employee arguably *not* bound by it.

Application of the *A-Copy* principle here would not require EMC to sue preemptively every former employee who violated a covenant not to compete. EMC could easily modify the terms of its standard non-competition and non-solicitation provisions to provide for tolling of the one-year term of restraint if an employee is found in violation of the provision. *See Gaylord*

---

[2] At least two other Massachusetts court decisions appear to have enforced restrictive covenants against former employees beyond the terms of the contract. *See Oxford Global Res., Inc. v. Consolo*, 2002 WL 32130445, at *6 (Mass. Super. Ct. May 6, 2002) (enjoining an employee who had "violated [a] non-solicitation clause on a good number of occasions" from soliciting contractors of his former employer for one year from the date on which discovery was complete, despite the impending expiration of the one-year term of restraint in the non-solicitation provision); *Modis, Inc. v. The Revolution Grp., Ltd.*, 1999 WL 1441918, at *9 (Mass. Super. Ct. Dec. 29, 1999) (enjoining defendants from disclosing confidential information, soliciting customers, or employing former employees of the plaintiff company for the "relatively short" time periods in the covenants, beginning on the date of issuance of the order). Neither of these decisions addressed *All Stainless* or *A-Copy*, and, unlike *A-Copy*, neither is binding on this court.

9

*Broad. Co. v. Cosmos Broad.*, 746 F.2d 251, 253 n.1 (5th Cir. 1984) ("We agree with the First Circuit's holding [in *A-Copy*]. The parties may contractually provide for the tolling of the non-competition period, if an employee breaches a covenant not to compete and the resulting civil proceedings to enforce that covenant consume more time than the period of the covenant itself. The contract in this case did not so provide."); *Nat'l Eng'g Serv. Corp. v. Grogan*, 2008 WL 442349, at *5 n.8 , *5 n.9, *7 (Mass. Super. Ct. Jan., 29 2008) (enjoining former employee from competing with, soliciting customers and employees of, or disclosing confidential information of former employee after the period of restraint because the restrictive covenants excluded periods of violation). A bargained-for tolling provision can protect an employer in the event that it does not discover a breach of a restrictive covenant until well into the restraint period. Such a tolling provision was not included in the KEA's non-competition and non-solicitation clauses, and the Court will decline the invitation to imply one in equity now.

The Court accordingly concludes that under *A-Copy* and related Massachusetts precedent, the contractual period of restraint should not be extended beyond the one-year terms provided in the non-solicitation and non-competition agreements. *See A-Copy*, 599 F.2d at 452; *All Stainless*, 364 Mass. at 777. EMC continues to have a remedy at law if it prevails on the merits for the alleged violation of these two provisions. *See A-Copy*, 599 F.2d at 452.

### B. Confidentiality Provision

EMC also urges the Court to enter a preliminary injunction against Blotto restraining him from misappropriating or misusing any of the company's confidential or proprietary information. Because the confidentiality provision in the KEA does not include a restrictive time period, the prior analysis is no obstacle to evaluating this request. In determining whether a preliminary

injunction should issue, the Court must consider (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm to the plaintiff if the injunction is denied; (3) the balance of relevant impositions, that is, the hardship to the non-moving party if enjoined as contrasted with the hardship to the moving party if no injunction issues; and (4) the effect, if any, of the Court's ruling on the public interest. *See Gonzalez-Droz v. Gonzalez-Colon*, 573 F.3d 75, 79 (1st Cir. 2009).

First, EMC is likely to succeed on the merits of its claim. The confidentiality provision in the KEA prohibits Blotto from using for his own benefit, divulging, or disclosing to anyone other than authorized EMC employees confidential information about the company. (*See* KEA ¶ 3).[3] EMC obviously has a legitimate interest in protecting the confidentiality of information about its employees, customers, products, business plans, and strategy. Blotto does not dispute the evidence that he took a thumb drive containing thousands of EMC's confidential files and maintained several diaries with confidential information. (*See* Blotto Decl. ¶¶ 60-61). Nor does he dispute the evidence that he accessed this information as late at March 2010, while in the employ of Knowledgent. (*Id.* ¶ 60). While Blotto may use his own skills, knowledge, and talent in competition with EMC, he may not misappropriate EMC proprietary documents and information. Accordingly, EMC has shown that it is likely to succeed on its claim that Blotto

---

[3] "Confidential Information" is defined under the KEA to include, without limitation, "any technical data, design, pattern, formula, computer program, source code, object code, algorithm, subroutine, manual, product specification, or plan for a new, revised or existing product; any business, marketing, financial, pricing or other sales-related data; information regarding the present or future business or products of the Company; any information regarding employees including contact information, employee lists, organizational charts, information concerning particular employee skill sets, technical and business knowledge, and compensation; and any information concerning the particular needs of clients or customers and their buying patterns, price sensitivities, key decision makers (and the contact information for such individuals), product needs, product specifications, request for proposals and the responses thereto." (KEA ¶ 3).

11

violated the terms of the confidentiality covenant.

Second, EMC has shown that failure to issue a preliminary injunction is likely to cause immediate irreparable harm to the company. While Blotto insists that he has turned over everything in his possession containing confidential information, EMC has demonstrated that he has not been particularly forthcoming in disclosing prior possession of this information. If further discovery reveals that Blotto possesses additional confidential information or made a copy of the information already uncovered, EMC could continue to suffer ongoing competitive harm.

Third, the balance of harms favors enjoining Blotto from further violating the confidentiality provision. Blotto would not suffer harm if the injunction issues. He would retain his position at Knowledgent and his ability to use his skills and talents to earn a livelihood. The injunction would only restrain him from accessing information to which he is not entitled. If the injunction does not issue, and Blotto continues to possess or disseminate proprietary and confidential company information, EMC will suffer obvious harm.

Finally, the Court perceives little impact on the public interest in this case. Insofar as the public has a general interest in ensuring individuals the opportunity to carry on work without undue interference while also guaranteeing companies protection for their confidential or proprietary information, issuing the injunction furthers both ends.

**IV.   Conclusion**

For the foregoing reasons, the Court will enter a preliminary injunction in this matter as follows:

From the date of issuance of this order until a determination of the merits of this case, defendant Christopher Blotto is enjoined from directly or indirectly using or disclosing to any

party outside EMC any confidential information of EMC, as defined by the terms of paragraph 3 of the Key Employment Agreement dated September 21, 2007.  Blotto is further ordered to disclose and turn over to EMC any other confidential information in his possession and to advise EMC if he distributed any such confidential information after leaving the employ of EMC or if he possessed any such information and destroyed or discarded it.  Blotto is further ordered to execute, and provide to EMC within 14 days of this order, a sworn statement that he is no longer in possession of any of EMC's confidential information.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
                                                United States District Judge

Dated:  December 15, 2010